## JEFFERSON v. UNITED STATES.

### No. 5815.

United States Court of Appeals
Fourth Circuit.

Reargued Nov. 8, 1949.

Decided Dec. 19, 1949.

Writ of Certiorari Granted March 13, 1950.

Morris Rosenberg, Baltimore, Md. (Robert H. Archer, Jr., Baltimore, Md., on the brief), for appellant.

Morton Hollander, Attorney, Department of Justice, Washington, D. C. (H. G. Morison, Assistant Attorney General, Bernard J. Flynn, U. S. Attorney, James B. Murphy, Assistant U. S. Attorney, Baltimore, Md., Paul A. Sweeney and Massillon M. Heuser, Attorneys, Department of Justice, Washington, D. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by a member of the armed forces of the United States under the Federal Tort Claims Act, 28 U.S. C.A. § 2674 et seq., to recover for person-

---

al injuries resulting from a surgical operation performed by an army surgeon at Fort Belvoir, Virginia. It was found by Judge Chesnut at the trial in the District Court, 77 F.Supp. 706, that a towel used during an operation had been left in a surgical wound through the negligence of government employees at the hospital, and in consequence the plaintiff had suffered serious injuries for which $7,500 would be an appropriate verdict if the case were tenable. The judge held, however, that the statute was not intended to cover claims by members of the armed forces of the United States for service connected injuries suffered while in the service. He therefore dismissed the case on motion of the United States and this appeal followed.

In the meantime the Supreme Court, upon an appeal from this court, rendered its decision in Brooks v. United States, 337 U. S. 49, 69 S.Ct. 918, in which it held that two soldiers riding in their own automobile while on leave were entitled to recover for injuries received when they were struck by a United States Army truck driven by a civilian employee of the Army. That decision established that members of the armed forces of the United States can recover under the Federal Tort Claims Act for injuries not incident to their service, but left open the question whether the statute also covers claims by service men for injuries incident to their service. The court said: 337 U.S. pages 52-53, 69 S.Ct. page 920. "The Government envisages dire consequences should we reverse the judgment. A battle commander's poor judgment, an army surgeon's slip of hand, a defective jeep which causes injury, all would ground tort actions against the United States. But we are dealing with an accident which had nothing to do with the Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks' service, a wholly different case would be presented. We express no opinion as to it, but we may note that only in its context do Dobson v. United States, 2 Cir., 27 F.2d 807, Bradey v.

United States, 2 Cir., 151 F.2d 742, and Jefferson v. United States, D.C., 77 F.Supp. 706, have any relevance. See the similar distinction in 31 U.S.C. § 223b, 31 U.S.C.A. § 223b. Interpretation of the same words may vary, of course, with the consequences, for those consequences may provide insight for determination of congressional purpose. Lawson v. Suwannee Fruit & Steamship Co., 336 U.S. 198, 69 S.Ct. 503. The Government's fears may have point in reflecting congressional purpose to leave injuries incident to service where they were, despite literal language and other considerations to the contrary. The result may be so outlandish that even the factors we have mentioned would not permit recovery. But that is not the case before us."

Since this decision was rendered, the question not decided by the Supreme Court has been considered in the Second and Tenth Circuits which came to opposite conclusions. In Feres, Ex'x, v. United States, 2 Cir., 177 F.2d 535, it was held that the estate of an army officer killed in a fire in unsafe army barracks in which he had been quartered through the negligence of superior officers was not entitled to recovery for his death; but in Griggs, Ex'x, v. United States, 10 Cir., 178 F.2d 1, it was held that the estate of an army officer could recover under the act for his wrongful death caused by the negligence of members of the Army Medical Corps while he was under medical treatment. The Second Circuit based its decision largely upon the provision which Congress has made for military persons in the form of disability payments and pensions. The Tenth Circuit found more persuasive the broad language of the statute and the fact that Congress failed to except service connected injuries of military personnel although bills containing such exceptions had been presented for its consideration.

We are in accord with the conclusions reached by the Second Circuit. The choice lies between a literal interpretation of the Act and a construction which recognizes the peculiar relationship that exists between a member of the armed

services and superior military authority. Congress was plainly impressed with the large number of justified complaints on the part of persons injured through the negligence of employees engaged in the manifold activities of the federal government, and found it desirable to modify the government immunity from suit and to give relief to injured persons through the procedure of the courts rather than through private statutes which burdened the legislative branch of the government and caused delay in the consideration of complaints. Hence the Federal Tort Claims Act was passed. It seems unreasonable, however, to conclude that Congress, while accomplishing these desirable purposes, intended at the same time to subject every injury sustained by a member of the armed forces in the execution of military orders to the examination of a court of justice if the injured person should make the claim that his injury was caused by the negligence of a superior officer. If this were so, the civil courts would be required to pass upon the propriety of military decisions and actions and essential military discipline would be impaired by subjecting the command to the public criticism and rebuke of any member of the armed forces who chose to bring a suit against the United States. We think this consideration too weighty to be swept aside by adverting to the exceptions relating to military personnel which were contained in bills submitted to Congress when the matter was under examination. When a statute is subjected to the interpretation of the courts, too much weight should not be given to the language contained in discarded measures or to the statements of legislators in the course of debate. Order of Ry. Conductors of America v. Swan, 329 U.S. 520, 529, 67 S.Ct. 405, 91 L.Ed. 471; Jewell Ridge Coal Corp. v. Local No. 6167, 325 U.S. 161, 168, 65 S.Ct. 1063, 89 L.Ed. 1534.

This conclusion is fortified by the considerations enumerated and relied on in the opinion of Judge Chesnut and that of the Second Circuit in the Feres case. The distinctively federal character of the government-soldier relationship is recognized in United States v. Standard Oil Co., 332 U.S. 301, 305, 67 S.Ct. 1604, 91 L.Ed. 2067, where the extent to which state law may govern the relationship between military personnel and persons outside the military establishment was contrasted with the complete subjection to federal authority of the relationship between persons in the military service and the government itself. That state law governs in suits under the Federal Tort Claims Act is shown by the provision that the United States is liable for injuries caused by the negligence of a government employee acting within the scope of his employment under circumstances where a private person would be liable to the claimant under the law of the place where the act of omission occurred; but it is not reasonable to suppose, in the absence of an express declaration on the point, that Congress intended to adopt so radical a departure from its historic policy as to subject internal relationships within the military establishment to the law of negligence as laid down by the courts of the several states.

The serviceman is not left without protection by the interpretation of the statute, for as pointed out in the opinion of the District Court, 77 F.Supp. 711, Note 1, Congress has long had in mind the peculiar dangers to which the military man is exposed, and has accordingly made elaborate provisions for pay and allowances and retirement benefits for persons in the Army and the Navy, in addition to medical and hospital treatment, which are always available. An analogous situation in suits by seamen against the United States under the Public Vessels Act, 46 U.S.C.A. § 781 et seq., led the court to decide that the permission granted to persons to libel the United States in personam for damages caused by the negligent handling of a public vessel refers to damages suffered by third persons but not by members of the ship's company. Dobson v. United States, 2 Cir., 27 F.2d 807; Bradey v. United States, 2 Cir., 151 F.2d 742.

Affirmed.