John D. NAGY, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

Civ. A. No. 78–135.

United States District Court, District of Columbia.

June 1, 1979.

William A. Bradford, Jr., Jean S. Moore, Hogan & Hartson, Washington, D. C., for plaintiff.

John Oliver Birch, Richard A. Mehler, James C. Eastman, Washington, D. C., for defendants.

## OPINION

JOHN LEWIS SMITH, Jr., District Judge.

This is a tort action against the United States and certain federal officials in their

official and individual capacities, alleging common law negligence and violations of plaintiff's First, Fourth, Fifth and Ninth Amendment rights. Plaintiff seeks six million dollars in compensatory and punitive damages for alleged psychological injuries alleged to have arisen from his participation while a serviceman in two LSD medical experiments conducted by the United States Army in June of 1966. Plaintiff claims that his participation was without informed consent on his part and that there was inadequate medical follow up to the experiments. The matter is before the Court on defendants' motions to dismiss or in the alternative for summary judgment.

■ It is well established that a service member cannot sue the United States or other servicemen for injuries incident to his service in the Armed Forces. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The rationale for the "incident to service" rule and the *Feres* decision is three-fold: (1) military discipline would be hindered if soldiers were allowed to sue the Government for such injuries; (2) Congress does not intend the Federal Tort Claims Act to encompass plaintiffs in military service; and (3) a system of benefits is available to the injured soldier to compensate him for injuries incurred in the line of duty. In *Feres,* the Supreme Court stated:

> We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving.

Plaintiff contends that the *Feres* doctrine does not bar this action, because it is not based on a claim under the Federal Tort Claims Act, but instead seeks damages for violations of Nagy's constitutional rights. *Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■ An action sounding in constitutional, as opposed to common law, tort is not exempt from application of the *Feres* doctrine. *Misko v. United States, et al.,* 453 F.Supp. 513 (D.D.C.1978), *aff'd* 193 U.S.App.D.C. ——, 593 F.2d 1371 (1979); *Jaffee v. United States,* 468 F.Supp. 632 (D.N.J.1979, Stern,

J.). In *Misko* the Court noted that even assuming that the action stated a valid claim for which money damages could be granted:

> the question still remains whether the characterization of the malpractice claim in constitutional terms should make any difference in application of the *Feres* doctrine. The Court concludes that it should not. Any other result would mean that the *Feres*-based immunity of armed forces medical officers could be abrogated through an exercise in pleading. *Id.* at 515.

Likewise in this case plaintiff has attempted to circumvent the immunity of former Army medical officers and the United States by pleading the claim in a different way.

■ Additionally, on October 8, 1976, Congress enacted legislation which makes a suit under the Tort Claims Act the sole remedy for injuries "caused by the negligent or wrongful act or omission" of military medical personnel. Pub.L. No. 94–464, 90 Stat. 1985 (codified at 10 U.S.C. § 1089 (1976)). It is evident, therefore, that plaintiff may not sue the United States on constitutional grounds for alleged damages arising out of his participation while a serviceman in the LSD medical experiments.

Plaintiff further avers that in any event he is claiming injury and damages not only from the administration of LSD to him in 1966 while he was an active duty serviceman, but also from the defendants' wrongful failure to follow up his physical and psychiatric health after his discharge from the Army. The failure to follow-up claim is not barred by the "incident to service" test, plaintiff argues, citing *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). *Brown* is inapposite here because in that case the suit was based solely on an injury occurring after the soldier had been discharged. In *Schwartz v. United States,* 230 F.Supp. 536 (E.D.Pa.1964), *aff'd* 381 F.2d 627 (3d Cir. 1967), the Army inserted a drug into the plaintiff's sinus to aid in an x-ray in 1944 and in 1957 cancer was discovered resulting from the accumulation

of the drug in his sinus. The Court found liability and awarded damages stating that the wrongful act giving rise to liability was not the administration of the drug in 1944 but rather [was] in not having affirmatively sought out those who had been endangered after there was knowledge of the danger in order to warn them that in supposedly innocent treatment there had now been found to lurk the risk of devastating injury.

This case is distinguishable from *Schwartz* for several reasons. In *Schwartz* the plaintiff returned to Army doctors approximately 50 times complaining of various problems including burning in the nose and throat, headaches and discharges of blood and pus. X-rays taken during these visits showed the presence of an opaque substance in the sinus. Warnings of the hazards of the use of umbrathor had appeared in major medical journals in the 1930's and new research and case studies confirming its carcinogenic properties were documented in the 1940's. Despite this, the doctors did not review the past medical record of the patient, which was available in the same building and which clearly stated that the plaintiff had received umbrathor. Going further the Court found that the doctors were negligent in not removing the retained material, after they were aware of its presence, even if they were ignorant of its true nature. Finally, the Court found that the plaintiff was not contributorily negligent in that he repeatedly sought treatment when he felt that it was necessary.

■ In this case, plaintiff Nagy has voluntarily taken LSD and related hallucinogenic drugs some 50–100 times after the two times defendants administered the drug to him, "believing that he had already been damaged by defendants' actions, and thinking there were no additional risks." It cannot be said that he was not contributorily negligent. Additionally, defendants did notify plaintiff after studies had shown that adverse effects might occur and offered to fly him to Walter Reed Army Hospital for an examination. Therefore, plaintiff cannot claim injury from failure to follow up on the two administrations of LSD during the experiments, when he himself then took LSD a great number of times after the experiments, and defendants notified him of the possible effects.

Accordingly, defendants' motions to dismiss are granted.