Marjorie L. EVERETT, surviving spouse and Executrix of the Estate of Bert E. Everett, Deceased, Plaintiff,

v.

The UNITED STATES, Defendant.

No. C-2-79-127.

United States District Court, S. D. Ohio, E. D.

June 13, 1980.

Jack J. McClelland, Zanesville, Ohio, for plaintiff.

Albert R. Ritcher, Asst. U.S. Atty., Columbus, Ohio, for defendant.

## OPINION AND ORDER

DUNCAN, District Judge.

This is an action for damages against the United States. The plaintiff, Marjorie L. Everett, is the surviving spouse and executrix of the estate of her deceased husband, Bert E. Everett. The claim arises out of plaintiff's decedent's participation, as an enlisted man in the United States Air Force, in military maneuvers held in 1953 in conjunction with nuclear weapons tests at Yucca Flats (Camp Desert Rock), Nevada. Plaintiff claims that her decedent, along with other servicemen, was ordered to march through a nuclear blast area less than an hour after detonation of a nuclear device, resulting in their exposure to large and hazardous doses of radiation. As a proximate result of this exposure, plaintiff claims, her husband was stricken with cancer. He died in 1977. Plaintiff seeks damages for decedent's wrongful death, for loss of consortium, lost wages, and for medical and funeral expenses. The sole defendant in this case is the United States of America. The matter is presently before the Court on the defendant's motion to dismiss.

The Court has benefited by the briefs and memoranda of the parties and by oral argument. Upon consideration, and for the reasons stated below, the motion will be granted in part and denied in part.

At the outset the Court notes that the questions raised in this case present matters of the utmost national concern, now increasingly being brought to light in legislative and judicial forums. Recent disclosures concerning the possible disastrous effects upon humans of such chemicals as "Agent Orange," a defoliant used in Vietnam, as well as exposure to atomic radiation and drugs such as LSD, raise concerns about the government's responsibility to its citizens, and servicemen, when such materials are tested or used by the military or other governmental agencies. With this in mind, the Court will turn to the issues at hand.

Plaintiff's complaint sets forth her claims in five counts. Count I is a claim for medical expenses and lost wages alleging that the defendant acted "negligently, willfully and wantonly" in ordering the decedent's participation in maneuvers which caused him to be exposed to harmful radiation. Counts II and III seek damages for plaintiff's loss of consortium due to the illness allegedly caused by the decedent's exposure to radiation and due to his eventual death from that cause. The jurisdictional basis asserted for Counts I, II and III is the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* By subsequent amendment plaintiff has added additional Counts IV and V. Count IV, also seeking damages for decedent's exposure to radiation, asserts jurisdiction arising directly under the Fifth and Ninth Amendments to the United States Constitution as well as under the Tort Claims Act. Count V alleges that the defendant was negligent in failing to warn the decedent of the harm which could result from his exposure to the nuclear radiation. Jurisdiction over this count is also asserted under both the Act and the Fifth and Ninth Amendments.

## I. *The Feres Doctrine*

At the heart of the present inquiry is the question whether plaintiff's claimed cause of action is barred by the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) and its progeny. In *Feres* the Supreme Court recognized an exception to the government's waiver of immunity under the Federal Tort Claims Act where military service personnel sue the United States for service-connected injuries. As stated by the Court, the exception provides that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159.

On its face the *Feres* bar would appear to sound the death knell for plaintiff's claims, at least insofar as they assert jurisdiction under the Tort Claims Act. Plaintiff, however, argues that her case is shielded from *Feres,* basically for three reasons. First, she claims the tort inflicted upon her husband was willful, wanton and reckless, not merely negligent, and that such purposeful and reckless "human experimentation" cannot be deemed to be incident to normal military service. Second, plaintiff claims that in any event *Feres* would not bar her claims brought directly under the Constitution, rather than under the Act, and finally, she contends that Count V, alleging a negligent failure to warn the decedent, occurred after his discharge from the service and therefore is outside the purview of the *Feres* doctrine. The Court will deal with these issues in turn.

### A.

Initially the Court must reject plaintiff's argument that a reckless tort committed against a serviceman somehow removes the case from the application of the *Feres* doctrine. The rationale of *Feres* simply does not permit a principled distinction among torts based on the level of culpability of the tortfeasor. In its recent reaffirmation of the *Feres* rule, in *Stencel Aero Engineering Corp. v. United States,* 431

U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) (*Stencel*), the Supreme Court explicated the three-pronged foundation of the doctrine as follows:

> First, the relationship between the Government and members of its Armed Forces is "distinctively federal in character" . . . it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory "no fault" compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. A third factor was explicated in *United States v. Brown*, 348 U.S. 110, 112 [75 S.Ct. 141, 143, 99 L.Ed. 139] (1954), namely, "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . ."

431 U.S. at 671-72, 97 S.Ct. at 2058. These considerations apply with equal vigor to a claim alleging reckless or even intentional torts. Thus, whether the tort alleged is reckless, intentional or negligent, the liability of the United States would still be dependent, pursuant to 28 U.S.C. § 1346(b), on the fortuity of the situs of the tort, a factor which undercuts the "distinctively federal" nature of the relationship between the United States and its military forces. *See, Stencel* at 672, 97 S.Ct. at 2058. Further, victims of military recklessness also have available to them the various benefits accorded under the Veterans Benefits Act, 38 U.S.C. § 301 *et seq.*, as do victims of other injuries incurred incident to service. *See Jaffee v. United States*, 592 F.2d 712, 716–17 (3d Cir. 1979) (*Jaffee I*).

Finally, it is the existence of the "peculiar and special relationship," *United States v. Brown*, 348 U.S. at 112, 75 S.Ct. at 143,

between the soldier and his superiors which is at the heart of *Feres* and "best explain[s]," *United States v. Muniz*, 374 U.S. 150, 162, 83 S.Ct. 1850, 1857–1858, 10 L.Ed.2d 805 (1962), the reason for the broad immunity recognized by the Supreme Court. Suits alleging intentional or reckless tortious conduct would be as disruptive of this special relationship as suits based on negligence. "[I]t is the suit, not the recovery," that is the disruptive factor. *Henninger v. United States*, 473 F.2d 814, 815–16 (9th Cir. 1973). The present case is a paradigm of this. Unlike *Feres* itself and its companion cases, which involved, respectively, a serviceman sleeping in a barracks who died due to alleged negligence in the maintenance of a heating plant, and two servicemen who were victims of alleged medical malpractice, this action arises out of injuries allegedly incurred during actual military maneuvers in the field. Short of combat, this situation implicates the military's special requirement of discipline and order in its purest form. The effect of permitting members of the armed forces to challenge the wisdom of military orders to which they are subjected by means of subsequent tort suits was summarized recently as follows:

> If claims for injuries sustained by members of the armed forces in the execution of military orders were subjected to the scrutiny of courts of justice, then the civil courts would be required to examine and pass upon the propriety of military decisions. The security and common defense of the country would quickly disintegrate under such meddling. "[A]ctions and essential military discipline would be impaired by subjecting the command to the public criticism and rebuke of any member of the armed forces who chose to bring a suit against the United States."

*Jaffee I, supra*, 592 F.2d at 717 (citation omitted). The effect is no different when plaintiff claims, as here, that the activity complained of is so reckless as to be outside the boundaries of duty reasonably connected with the United States Air Force. Courts hearing such claims would still be in

the position of "examin[ing] and pass[ing] upon the propriety of military decisions," *id.*, a result not permitted by *Feres.*

To the extent *Feres* and its successors have decided to insulate military activity from judicial review, the Court has no warrant to intrude, despite inequities which may nevertheless remain. This case is not unique in alleging reckless or intentional wrongdoing against the government and military. For example, in *Stanley v. Central Intelligence Agency,* Case No. 78–8141–CIV–CF, (S.D.Fla. May 16, 1979), plaintiff alleged that the Army had administered doses of LSD to him for testing, without his knowledge. As does the plaintiff herein, Stanley argued that such testing was so "patently illegal" that it could not be considered an activity "incident to service." The district court rejected the argument there, finding the result, although "truly unpleasant," to be mandated by *Feres.* Likewise in *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C.1979), also an action arising out of alleged LSD testing on a soldier, the court found that *Feres* could not be circumvented simply by pleading variations on the tort theme. Judge Richey reasoned as follows:

> Although in *Feres*, the Supreme Court only reviewed claims alleging negligence on the part of the military, neither the language nor the rationale of the Court's decision indicates that the legal theory of a soldier's claim ought to be a salient factor in determining the scope of intramilitary immunity. In explaining its holding, the court broadly provided immunity for *"injuries"* which "arise out of or are in the course of activity incident to [military] service". . . . The constitutional and intentional tort claims raised [in this case] clearly involve such injuries.

471 F.Supp. at 348. This Court agrees and concludes therefore that the doctrine of *Feres v. United States* serves to bar suit under the Federal Tort Claims Act for intentional torts as well as reckless and negligent torts arising out of or incident to military service.[1]  *Accord, Citizens National Bank of Waukegan v. United States,* 594 F.2d 1154 (7th Cir. 1979); *Schmid v. Rumsfeld,* 481 F.Supp. 19, 21 (N.D.Calif.1979); *Thornwell, supra; Davis v. United States,* Civ. No. 78–0734–GT (S.D.Calif. July 26, 1979); *Rotko v. Abrams,* 338 F.Supp. 46 (D.Conn.1971), aff'd., 455 F.2d 992 (2d Cir. 1972).

### B.

The Court must also reject plaintiff's amended claims seeking relief directly under the United States Constitution. Although it is clear that such *"Bivens"* actions against responsible federal officers are now permissible under several amendments, *see e. g., Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment); *Carlson v. Green,* —— U.S. ——, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (Eighth Amendment); *Bivens v. Six Unknown Federal Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (Fourth Amendment); the question remains whether such actions may be brought in a case such as this one to avoid the *Feres* bar. The Court holds that it may not. "An action sounding in constitutional, as opposed to common law, tort is not exempt from application of the *Feres* doctrine." *Nagy v. United States,* 471 F.Supp. 383, 384 (D.D.C.1979). To find otherwise would permit abrogation of *Feres*-based immunity through a mere exercise in pleading. *Schmid v. Rumsfeld, supra,* 481 F.Supp. 19, 21; *Davis v. United States, supra; Calhoun v. United States,* 475 F.Supp. 1, 4–5 (S.D.Calif.1977), aff'd., 604 F.2d 647 (9th Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 1029, 62 L.Ed.2d 761 (1980); *Misko v. United States,* 453 F.Supp. 513, 515 (D.D.C.1978), aff'd, 593 F.2d 1371 (D.C. Cir. 1978).

The Court reiterates that it is the suit itself, not the theory of the cause of action, which implicates the concerns stressed by the Supreme Court in *Feres* and *Stencel.* It is this Court's recognition of those concerns that mandates the application of the *Feres* bar to the present case.

---

1. Plaintiff's derivative complaints, for loss of consortium, are also barred. *Monaco v. United States,* Case Nos. C 79–0859 SW and C 79–0860 SW (N.D.Calif. Nov. 6, 1979).

### C.

The Court has read with interest the recent opinion of the United States Court of Appeals for the Third Circuit in *United States v. Jaffee* (3d Cir. Feb. 20, 1980) (*Jaffee II*). The *Jaffee* litigation is of interest to this Court since it arises out of the same 1953 military maneuvers at the Nevada atomic test site in which the decedent of the plaintiff in this case participated. The plaintiff in *Jaffee* was stricken with cancer and claimed that the disease was a result of his exposure, while in the military to the atomic radiation from the Nevada tests.

Asserting that the government deliberately violated rights guaranteed by the First, Fourth, Fifth, Eighth and Ninth Amendments, Jaffee and his wife filed a complaint consisting of four counts in the United States District Court for the District of New Jersey. In Counts I, II and III, the Jaffees joined the United States and unnamed individuals as defendants and made claims for money damages. Count IV was a class action, in which Stanley Jaffee sought to represent all of the soldiers who were ordered to be present at the explosion. In that count, naming only the United States as a defendant, Jaffee prayed that the United States be directed to warn all members of the class about the medical risks facing them and that the United States be required to provide or subsidize medical care for the members of the class. The Jaffees claimed jurisdiction directly under the above amendments to the United States Constitution. They did not base any of their action on the Federal Tort Claims Act.

In *Jaffee I, supra*, 592 F.2d 712, the Third Circuit considered Count IV of the complaint, which as stated above named only the United States as a defendant, and affirmed the dismissal, on the basis of sovereign immunity and *Feres*, of the portion

seeking medical care for members of the class.[2]

*Jaffee II* considered the counts of plaintiff's amended complaint seeking damages for personal injury from defendants in addition to the United States, including 11 named individual defendants, who at the time of Jaffee's service were officers or employees of the United States Army, the Department of Defense or the Atomic Energy Commission, and certain unnamed additional officers alleged to be responsible for his exposure. The district court, 468 F.Supp. 632 (D.N.J.1979), dismissed the complaint as to the individual defendants, finding that they were shielded from liability by the *Feres* doctrine. On appeal the Third Circuit reversed, finding that *Feres* accords an individual defendant at best a qualified, rather than an absolute immunity from suit.

Only *Jaffee I* is directly relevant to the suit presently before this Court. The plaintiff herein has named only the United States as a defendant, and, as held in *Jaffee I*, such an action may not be maintained against the sovereign. Recent cases such as *Davis v. Passman* and *Carlson v. Green, supra*, and *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), permitting direct causes of action for constitutional torts, all named individual defendants other than the United States. Distinguishing such cases, the Third Circuit stated in *Jaffee I*:

> But the suits in *Bivens* and *Butz* were against individual federal officers and not against the United States. *Because Jaffee has sued the government itself, Bivens and Butz do not afford him a traversable bridge across the moat of sovereign immunity.*

592 F.2d at 717 (footnote omitted) (emphasis added). Likewise in this case plaintiff is without a means of bridging governmental

---

**2.** The Court of Appeals reversed the dismissal of the portion of Count IV seeking to compel the United States to warn class members of the health hazards which they faced as a result of their exposure to the Nevada atomic test radiation. With respect to that claim the court held

that sovereign immunity is waived under the Administrative Procedure Act, 5 U.S.C. § 702, as amended, for claims for "other than money damages" due to agency inaction. Since in the present case plaintiff seeks money damages, § 702 is inapplicable.

immunity. For this reason, and all the reasons stated above, the Court holds that Counts I–IV of plaintiff's complaint must be dismissed.

### D.

Although *Jaffee II* is not, in the Court's view, directly applicable to the present case, it does warrant brief review and comment.

In concluding that *Feres* does not bar a suit alleging willful tortious violations of constitutional rights against individual federal officers, the Court of Appeals found support in decisions of the Supreme Court recognizing only a qualified immunity for certain state and federal officials. *E. g., Butz v. Economou, supra; Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Supreme Court has, on the other hand, found absolute liability to be required for other officials. *E. g., Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (judicial officers acting within their jurisdiction); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (state prosecutor). The Supreme Court has outlined the principle to be used in analyzing an immunity claim as follows:

> [F]ederal officials who seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope.
>
> .    .    .    .    .
>
> Although a qualified immunity from damages liability should be the general rule for executive officials charged with constitutional violations, our decisions recognize that there are some officials whose special functions require a full exemption from liability. .    .    . In each case, we have undertaken "a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it."

*Butz v. Economou, supra*, 438 U.S. at 508, 98 S.Ct. at 2911–12 (citations omitted).

The question thus presented is whether the concern for preserving the "peculiar and special relationship of the soldier to his superiors," *United States v. Brown, supra*, 348 U.S. at 112, 75 S.Ct. at 143, and for avoiding the "extreme results," *id.* of allowing suits by soldiers against their military superiors, is a public policy sufficiently important to compel an absolute immunity for military personnel from suits arising out of or incident to their service.

Relying on the venerable case, *Wilkes v. Dinsman*, 48 U.S. (7 How.) 89, 12 L.Ed. 618 (1849), on writ of error after new trial, *sub nom., Dinsman v. Wilkes*, 53 U.S. (12 How.) 390, 13 L.Ed. 1036 (1851), the Third Circuit in *Jaffee II* found that no such immunity is permitted. Although this Court need not decide the issue at the present juncture, it is sufficient to note that the matter is not free from doubt, particularly given the otherwise uniform finding by the courts of an intra-military immunity under *Feres* for both negligent and intentional torts. *See also, Jaffee II*, (Higginbotham, J. concurring)[3], *Thornwell v. United States, supra*, and the view of the United States Court of Appeals for the Seventh Circuit, analyzing the relevance of *Dinsman* in a suit for intentional torts which occurred incident to military service:

> Although the complaint in *Dinsman* was held to state a cause of action where a flogged seaman brought suit against a superior officer, in the past 128 years the case has never been cited for the proposition that a serviceman is entitled to recover against the United States for intentional torts committed incident to service or that the Federal Tort Claims Act permits the action. In fact, the Supreme Court impliedly limited the decision to situations where a superior officer was sued as a "private person." *See, Dalehite v. United States*, 346 U.S. 15, 59, 73 S.Ct. 956, 980, 97 L.Ed. 1427 (1953).

*Citizens National Bank of Waukegan v. United States, supra*, 594 F.2d 1157 n.8;

---

**3.** Indeed, it has come to the attention of the Court subsequent to the filing of this opinion that the Court of Appeals for the Third Circuit has vacated *Jaffee II*, a majority of the judges of that Court having voted for rehearing *en banc.* (April 11, 1980).

*accord, Davis v. United States, supra.* In short, it is clear that the *Feres* doctrine, and its underlying rationale, is still a vigorous one. *Stencel Aero Engineering Corp., supra.* The same cannot so clearly be said for *Dinsman.* Having stated these concerns, the Court will now turn to Count V of plaintiff's complaint.

## II

▉ Count V of plaintiff's amended complaint alleges that the government was negligent in failing to warn the decedent of the harmful effects of the radiation to which he was exposed. Jurisdiction over this claim is asserted under both the Federal Tort Claims Act and directly under the Constitution. Upon careful consideration the Court finds that it has jurisdiction over Count V and that plaintiff has stated a claim therein, but only under the Federal Tort Claims Act. For the reasons previously stated, plaintiff's constitutional claim made against the sole defendant United States is barred by sovereign immunity.

In permitting this claim to go forward, the Court is persuaded by the thoughtful opinion of Judge Richey in *Thornwell v. United States, supra,* 471 F.Supp. 344. There, after reviewing the applicable case law, he stated:

To summarize the relevant precedent, it appears that there are three types of personal injury cases which involve post-discharge negligence. In the first case, the military performs separate negligent acts (i. e., two improper operations), one before, and one after discharge; *United States v. Brown,* 348 U.S. 110, [75 S.Ct. 141, 99 L.Ed. 139] (1954), and *Hungerford v. United States,* 192 F.Supp. 581 (N.D. Cal.1961), *rev'd on other grounds,* 307 F.2d 99 (9th Cir. 1962), both clearly indicate that the injured veteran may recover for the later act. In the second case, a single negligent act occurs and its effects linger after discharge; *Feres v. United States,* 340 U.S. 135, [71 S.Ct. 153, 95 L.Ed. 152] (1950), holds that, under some circumstances, this one act is subject to intra-military immunity. Third, the military may commit an intentional act and then negligently fail to protect a soldier turned civilian from the dire consequences which will flow from the original wrong. This Court holds that, under such circumstances, the injured civilian may have a valid claim against the tortfeasors. The later negligence is a separate wrong, a new act or omission occurring after civilian status is attained; the perpetrators of this wrong must be held accountable for their conduct.

471 F.Supp. at 352. This Court finds that the present case properly falls in the third category described above. Although Count V is somewhat unclear with respect to the time frame in which plaintiff alleges defendant's failure to warn occurred,[4] it does incorporate the allegations of paragraph 11 of the complaint.[5] A fair reading of both allegations together indicates that plaintiff

---

4. Count V of the amended complaint reads in part as follows:

> 24. Plaintiff realleges paragraphs 2 through 11 and paragraph 22 as if fully set forth herein.
>
> . . . . .
>
> 25. That the defendant acting by and through its servants and employees of the Atomic Energy Commission and the United States Air Force exposed the plaintiff's decedent, Bert E. Everett, to extremely hazardous conditions of radioactivity and then failed to adequately warn said Bert E. Everett of the harmful and dangerous effects of exposure to radioactivity which were known or should have been known by the defendant thereby violating said Bert E. Everett's Fifth Amendment and Ninth Amendment rights.

5. Paragraph 11 of plaintiff's original complaint reads as follows:

> 11. That further, the said Bert E. Everett never had any knowledge of the aforementioned causal relation between his 1953 exposure to radioactivity and subsequent contracting of advanced malignancy of metastatic cancer, nor was it reasonably ascertainable by him; that such causal relation was discovered only after his death; and, that such causal relation was not previously discovered due to the conduct of the defendant, acting by and through its servants and employees, concealing, minimizing, failing to warn of or disclose such knowledge or otherwise relevant information within its exclusive possession and control regarding the potential, harmful, and dangerous effects of human exposure to radioactivity.

seeks damages for the government's failure to warn the decedent at any time after his discharge and to the time of his death, of the dangers to which he had been exposed. Particularly in view of plaintiff's previous allegations that the act of ordering the decedent into the atomic test area for "experimentation" was, *inter alia*, a willful tort, the subsequent claim that the defendant was negligent in failing to warn the decedent, in the Court's opinion, amounts to a second and "distinctly separate pattern[ ] of conduct," *Thornwell* at 351, for which relief can be granted. *Id.*[6]

■ Because the independent negligent act of failing to warn the plaintiff's decedent of the danger in which defendant had placed him occurred *after* decedent's discharge, it is not barred by *Feres. Thornwell, supra,* at 353; *Schwartz v. United States, supra,* 230 F.Supp. 536. However, because plaintiff has named only the United States as a defendant in Count V as in Counts I–IV, the direct constitutional claim is similarly barred by sovereign immunity. *Jaffee I, supra,* 592 F.2d at 717. *Cf., Carlson v. Green, supra,* —— U.S. ——, 100 S.Ct. 1468, 64 L.Ed.2d 15 (suit against federal prison officials); *Davis v. Passman, supra,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (U.S. Congressman); *Butz v. Economou, supra,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (Dept. of Agriculture officials).

*Conclusion*

For all the reasons foregoing, the motion to dismiss of the defendant United States is GRANTED as to Counts I–IV of plaintiff's

second amended complaint. The motion is DENIED as to Count V thereof.

So ORDERED.

---

6. The Court finds that both *Henning v. United States,* 446 F.2d 774 (3d Cir. 1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972), and *Wisniewski v. United States,* 416 F.Supp. 599 (E.D.Wis.1976), cited by the defendant herein, are distinguishable. Both of those cases consider a simple act of negligence which occurred while plaintiffs were on active duty (misdiagnosis of an X–ray (*Henning*) and failure to give notice of results of a blood test (*Wisniewski*)), the effects of which remained uncorrected after the plaintiffs were discharged. Here, by contrast, as in *Thornwell,* plaintiff claims her decedent was the victim of

a willfully inflicted harm while on active duty and then was subject to an independent negligent act after discharge when "defendants failed . . . to rescue him from the position of danger which they had created." *Thornwell* at 351. *Cf. Schwartz v. United States,* 230 F.Supp. 536 (E.D.Pa.1964) (plaintiff, victim of medical negligence while on active duty, returned to Army doctors some 50 times after discharge complaining of problems arising from the original negligent act. Failure to diagnose the error amounted to a separate and actionable act of negligence.)