Robert R. DUMAS

v.

The PRESIDENT OF the UNITED STATES, et al.

Civ. No. H–82–151.

United States District Court, D. Connecticut.

July 20, 1982.

Robert R. Dumas, pro se.

John B. Hughes, Asst. U.S. Atty., Alan H. Nevas, U.S. Atty., New Haven, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

CLARIE, Chief Judge.

The defendants[1] have moved to dismiss this action in which the plaintiff alleges, *inter alia,* that they violated the civil and constitutional rights of his brother, Private Roger Dumas, for which the plaintiff claims substantial monetary damages and equitable relief. Dumas specifically contends that the defendants, in their capacity as federal officials responsible for the conduct of military affairs during time of war, failed to obtain a timely release of his brother from a Korean prisoner of war camp in 1953, even though other prisoners of war who were in better physical health than Private Dumas were repatriated at that time. The defendants' posture is that the many military decisions which the Executive and Legislative Branches of Government must reach during wartime, including the repatriation and classification of soldiers who are missing in action or prisoners of war, are nonjusticiable, political questions, which

---

1. The defendants include:
 (a) President Ronald Reagan;
 (b) Alexander Haig, who was the Secretary of State when this action was commenced;
 (c) Secretary of Defense, Caspar Weinberger;
 (d) Secretary of the Army, John O. Marsh, Jr.;
 (e) Samuel Stratton, United States Representative from New York and Chairman of the Investigations Subcommittee of the House Committee on Armed Services of the 96th Congress;
 (f) John Lally, Legal Counsel to the House Investigations Subcommittee;
 (g) Lowell P. Weicker, United States Senator from Connecticut;
 (h) Christopher J. Dodd, United States Senator from Connecticut;
 (i) Lieutenant-Colonel John Fer, United States Air Force; and
 (j) Earl Flowers, United Press International.

constitutionally must be reserved exclusively to these two governmental bodies. They further represent that even if the Court were to find a justiciable question raised in the plaintiff's *pro se* complaint, the only possible jurisdictional ground for suing would be under the Federal Tort Claims Act ("FTCA"), but that this Act specifically exempts government officials from liability for "any claim arising out of the combatant activities of military forces during wartime" or claims in which "the government is exercising discretionary powers."

The Court finds that each of the plaintiff's claims, with the exception of the allegation that the defendants wrongfully classified Roger Dumas as "missing in action," when in fact he was a prisoner of war in North Korea, present either nonjusticiable political questions or fall within exceptions to the Federal Tort Claims Act. Accordingly, these claims are dismissed as a matter of law. The plaintiff will be permitted to continue with his claim of wrongful classification to trial, but this action may be maintained only against the Secretary of the Army, because he is the one defendant who is empowered, under 10 U.S.C. § 1552(a), to correct the military record of an army veteran when justice requires. Therefore, the claims against the remaining federal defendants are dismissed in their entirety. Furthermore, the Court dismisses the charges against the defendant Flowers because the plaintiff's amended complaint does not allege unlawful conduct, nor does the plaintiff seek damages against this defendant upon grounds for which legal relief might be granted.

### Facts

The plaintiff's brother, Roger Dumas, was a Private First Class in the United States Army during the Korean War. In November of 1950, the Department of the Army reported that Dumas was missing in action near Anju, North Korea. The plaintiff, who was also serving in the Army and

fighting in Korea at that time, claims that in 1953 he contacted several soldiers from his brother's Unit and that they informed him that Roger Dumas was not missing in action, but rather had been captured by the North Koreans. This fact was never confirmed by the United States or Korean Governments,[2] and Private Roger A. Dumas continues to be classified as missing in action by the United States Army.

Apparently unsatisfied with the diplomatic efforts of the Government, the plaintiff has conducted an exhaustive investigation in the intervening twenty years to determine what in fact happened to his brother and to ascertain whether the United States Government acted in good faith to identify the whereabouts, and obtain the release, of his brother. During the course of his investigation, Dumas represents that he has been contacted by several repatriated prisoners of war who have stated that Roger Dumas was a fellow POW in Camp # 5, Pyoktong, North Korea. *See* Plaintiff's Exhibits A–C. Another repatriated POW, Mr. James Hawkins, allegedly wrote to the plaintiff and indicated that he was present in Camp # 5 when POW Roger Dumas died in 1953. *See* Plaintiff's Exhibit A.

In 1980, the plaintiff petitioned the Army Board of Correction of Military Records ("ABCMR") to reclassify his brother, based upon the sworn statements of three repatriated POWs and other documentation,[3] as a "Prisoner of War" rather than "Missing in Action". The ABCMR denied this application on March 10, 1980, stating that "insufficient evidence had been presented to indicate probable material error or injustice." Dumas thereupon commenced this action, alleging that: (1) the defendants tortiously violated the civil and constitutional rights of Private Roger Dumas when they failed to obtain his release from Camp # 5 in 1953, even though he was in much poorer physical health than other POWs who were

---

**2.** The Korean Government, however, has submitted a list of POWs to the United Nations which includes the name of Private Roger Dumas, *see* Plaintiff's Exhibit E.

**3.** *See* Plaintiff's Exhibit E.

repatriated at that time; (2) the defendants have wrongfully failed to correct the military status of Roger Dumas from "Missing in Action" to "Prisoner of War" even though there is substantial available evidence to document that Dumas was captured, and interned at Camp # 5, until his death in 1953; and (3) the defendants have not honored House Resolution 292, which calls upon the Congress and Executive "to continue to make the return of, or a satisfactory accounting for, the four hundred and fifty American prisoners of war, a primary objective of the foreign policy of the United States." *See* Plaintiff's Complaint at 5.

### *Discussion*

A. *Count One: Constitutional and Civil Rights Claims*

■ The *pro se* plaintiff claims in Count One of the amended complaint that the civil and constitutional rights of his brother were violated when the federal defendants permitted Roger Dumas to die in Camp # 5 during 1953, even though POWs who were in better health than Dumas were repatriated at that time. Although the plaintiff does not cite any statutory, constitutional or judicial authority to support his allegations, and does not raise an appropriate jurisdictional base for this action, all complaints filed by *pro se* plaintiffs in civil rights actions are entitled to liberal interpretation, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and thus the plaintiff's Count One claims will not be dismissed by the Court unless there is no conceivable legal theory upon which Dumas could prevail, if this dispute were to proceed to trial. One legal theory which the plaintiff appears to rely on to support his cause of action against the defendants, based on the allegations contained in his complaint, is that the defendants negligently failed to obtain the release of his brother from Camp # 5 and that this tortious conduct is actionable under the Federal Tort Claims Act and the United States Constitution.

Traditionally, private plaintiffs have been barred, by the doctrine of sovereign immunity, from suing to recover damages against the United States for injuries proximately caused by the tortious conduct of agents or employees of the federal government. The Congress substantially limited such immunity, however, when it enacted the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq,* ("FTCA") which provides that governmental liability may arise from personal injury or property damage caused by the negligence of any Government employee "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

■ The Government's general consent to be sued under the FTCA has been limited, however, by several statutory and judicial exceptions. One such exception, commonly referred to as the *Feres* doctrine, provides that the Government cannot be held liable under the FTCA for any "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 140, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950); *In Re Agent Orange Product Liability Litigation,* 506 F.Supp. 762, 771 (E.D.N.Y.1980); *Harrison v. United States,* 479 F.Supp. 529, 532 (D.Conn.1979).

This judicial exception was created in the landmark Supreme Court decision *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In *Feres,* the Supreme Court granted certiorari in three separate actions to consider the legal issue of whether a serviceman should be permitted to recover damages against the Government for injuries sustained by him and proximately caused by other members of the military. *Feres v. United States,* 177 F.2d 535 (2d Cir.1949); *Jefferson v. United States,* 178 F.2d 518 (4th Cir.1949); *Griggs v. United States,* 178 F.2d 1 (10th Cir.1949). Two of these cases, *Feres* and *Griggs,* involved claims for wrongful death, and the third action, *Jefferson,* raised charges that an

Army doctor negligently failed to remove a towel from the plaintiff's stomach after performing surgery to relieve injuries sustained by the plaintiff on the battlefield.

In its comprehensive opinion, the *Feres* Court explored the unique relationship between officers and enlisted men in the military and examined the myriad of important and sensitive decisions that government officials must make when preparing troops for battle and executing military orders. Upon considering these factors, the Court concluded that a soldier could not recover damages against the United States or individual military personnel for injuries sustained by him incident to his service in the armed forces. *Feres v. United States, supra,* 340 U.S. at 141, 71 S.Ct. at 157; *see Nagy v. United States,* 471 F.Supp. 383, 384 (D.D.C.1979). The Court reasoned, *inter alia,* that: (1) general discipline in the military would be threatened if soldiers were permitted to challenge every military decision made by the Government; (2) the existence of the Veteran's Benefit Act, which provides comprehensive benefits to those soldiers injured in the line of duty, renders recovery in tort unnecessary; and (3) Congress did not intend that the FTCA should extend to plaintiffs injured while in military service. *Id.* at 142–45, 71 S.Ct. at 157–59; *see Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

The "incident to service" exception to the Government's general consent to be sued in tort has been consistently followed by the federal courts in a wide variety of contexts. The case *In Re Agent Orange Product Liability Litigation,* 506 F.Supp. 762 (E.D.N.Y. 1980) ("Agent Orange Case") is an especially illuminating example of the general judicial consensus, and broad application, of this "service" exception. In the *Agent Orange Case,* the plaintiff class, which was comprised of Vietnam veterans, their spouses, parents and children, sued the United States, alleging that the Government negli-

gently allowed them to be exposed to the dangerous chemical Agent Orange[4] and that they had suffered serious physical and genetic injuries due to this exposure. The plaintiff class also claimed that even though the Government was fully aware of the grave potential risks arising from exposure to Agent Orange, it failed to warn, or take proper precautions to protect, those United States troops who were present when this chemical was sprayed in the jungles of Vietnam.

Although noting the seriousness of the charges levied against the Government, the *Agent Orange* Court nonetheless rejected the claims of the plaintiff class, explaining that:

"If claims for injuries sustained by members of the armed forces in the execution of military orders were subjected to the scrutiny of courts of justice, then the civil courts would be required to examine and pass upon the propriety of military decisions. The security and common defense of the country would quickly disintegrate under such meddling. '[A]ctions and essential military discipline would be impaired by subjecting the command to the public criticism and rebuke of any member of the armed forces who chose to bring a suit against the United States.'" *Id.* at 771; *citing Jefferson v. United States,* 178 F.2d 518, 520 (4th Cir.1949), *aff'd sub nom, Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

In *Everett v. United States,* 492 F.Supp. 318 (S.D. Ohio, E.D.1980), the Court similarly relied on the "incident to service" exception when dismissing the plaintiff's tort claims. The plaintiff in *Everett* alleged that in 1953 her husband was ordered, while serving as an enlisted man in the United States Air Force, to walk through a nuclear blast test area less than an hour after a nuclear device was detonated in that area. Mrs. Everett further charged that as a result of the exposure to such large and hazardous doses of radiation, her husband con-

---

**4.** "Agent Orange" is a chemical defoliant used during the Vietnam War to expose enemy posi- tions.

tracted cancer and later succumbed to this disease in 1977. In an effort to distinguish her case from the *Feres* line of cases, the plaintiff argued that intentional, malicious, and reckless torts were not included within the *Feres* doctrine. The *Everett* Court again noted the gravity of the charges asserted against the defendant, but nonetheless invoked the *Feres* doctrine to dismiss the plaintiff's claim: "The rationale of *Feres* simply does not permit a principled distinction among torts based on the level of culpability of the tortfeasor." *Id.* at 320.

■ In this action, the Court finds no persuasive legal basis for distinguishing the claims of Mr. Dumas from the many above-cited decisions where the federal courts have relied on the *Feres* doctrine to dismiss claims against the Government arising from service-related injuries. Any damages that Private Dumas sustained in Korea, even if his brother were able to prove that such injuries were proximately caused by the negligent or otherwise tortious conduct of the Government, would necessarily have to be characterized as "incident, or related to, his military service." Indeed, the Government's policy relating to the classification and repatriation of soldiers cannot, in any legally meaningful way, be distinguished from its policy regarding the use of "Agent Orange" or nuclear testing operations.

Although not stated or suggested in his *pro se* complaint, the plaintiff might have attempted to distinguish this action from the *Feres* line of cases by asserting that his claims were grounded in constitutional and civil rights law as well as tort law and that the *Feres* doctrine is limited to actions sounding exclusively in tort. However, the Courts that have considered this question have uniformly rejected this argument, explaining that:

"[t]he question still remains whether the characterization of the malpractice claim in constitutional terms should make any difference in application of the *Feres* doctrine. The Court concludes that it should not. Any other result would mean that the *Feres*-based immunity of armed forces medical officers could be abrogated

through an exercise in pleading." *Nagy v. United States,* 471 F.Supp. 383, 384 (D.D.C.1979), *citing Misko v. United States, et al,* 453 F.Supp. 513, 515 (D.D.C. 1978), *aff'd* 593 F.2d 1371 (D.C.Cir.1979). *See Jaffe v. United States,* 468 F.Supp. 632 (D.N.J.1979).

Accordingly, since Count One of the plaintiff's amended complaint falls squarely within the *Feres* "incident to service" exception, the Court must dismiss this claim. Moreover, in addition to finding that Count One is barred by the *Feres* doctrine, the Court also dismisses this claim because the legal issues raised therein present nonjusticiable political questions which are constitutionally committed to the Executive and Legislative Branches of the Government and thus are not reviewable by the courts.

The political question doctrine, commonly subsumed within the general "law of justiciability", was adopted by the federal courts in deference to the particular competence, and constitutional responsibility, of the Executive and Legislative Branches of Government in dealing with matters of special political sensitivity. *See Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Mitchell v. Laird,* 488 F.2d 611 (D.C. Cir.1973). This doctrine of "nonjusticiability" was not intended, however, to shield the judiciary from its duty to resolve serious legal disputes, but rather was created as a prudent limitation on the authority of the courts to decide the small number of quasi-political cases in which there are no judicially discoverable and manageable standards for resolving the issues presented:

"In the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Baker v. Carr, supra,* 369 U.S. at 198, 82 S.Ct. at 699.

The recent decision in *Rappenecker v. United States,* 509 F.Supp. 1024 (N.D.Cal. 1979) discusses the application of the politi-

cal question doctrine in a particularly instructive manner. In *Rappenecker,* the plaintiffs, who included several former crewmen of the S.S. MAYAGUEZ, brought an action against the United States, claiming that the Government should be held liable for the injuries that they suffered when the United States attempted to rescue the MAYAGUEZ after it had been captured by Cambodian gunboats on May 12, 1975. The plaintiffs advanced two theories of liability in support of their claims: (1) the United States was negligent in undertaking and executing this military rescue operation; and (2) the Government breached its duty to warn the MAYAGUEZ of the dangers involved when travelling close to the Cambodian coastline.

The *Rappenecker* Court summarily dismissed these claims, relying on the political question doctrine:

"It has long been settled that the underlying factual or legal determinations on the basis of which the President conducts the foreign relations of the United States are not subject to judicial scrutiny." *Id.* at 1028.

The Court further explained that: "The responsibility for dealing with foreign nations over such matters as the seizure of American persons and property is clearly committed to the President". *Id.* at 1029.

In this action, the Executive similarly must be afforded full discretion and authority when negotiating with foreign nations for the release, or an accounting, of American soldiers. The Court will not substitute its judgment in such a delicate and serious matter.

B. *Plaintiff's Claim of Wrongful Classification*

In Count Two of the amended complaint, the plaintiff charges that the federal defendants have wrongfully failed to change the military status of his brother Roger from "Missing in Action" to "Prisoner of War" despite several sworn statements from repatriated POWs and other documentation which clearly proved that Dumas was interned, and ultimately died, at Camp # 5 in Anju, North Korea.

The proper administrative procedure for the correction of military records is outlined in 10 U.S.C. § 1552(a), and provides:

"(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. Under procedures prescribed by him, the Secretary of Transportation may in the same manner correct any military record of the Coast Guard. Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States."

Both parties concede that in 1980 the plaintiff applied to the Army Board of Correction of Military Appeals, pursuant to 10 U.S.C. § 1552(a), for correction of his brother's military classification. The parties also acknowledge that during March of 1980 the plaintiff received notice from the Army Board that his application had been denied, because "insufficient evidence had been presented to indicate probable material error or injustice" in the defendant's original classification of Dumas as "Missing in Action". *See Defendants' Memorandum in Support of Motion to Dismiss,* at 4–5, n. 1.

 Generally, once the jurisdiction of the Army Board of Correction has been invoked, the moving party is bound by the decisions of the Tribunal, and the Court will not overturn the administrative ruling unless it is "arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced...." *Thornton v. Coffey,* 618 F.2d 686, 692 n. 3 (10th Cir. 1980), *quoting Sanders v. United States,* 594 F.2d 804, 811 (Ct.Cl.1979). Judicial review of this administrative ruling, however, requires findings of fact that cannot properly be decided in a Motion to Dismiss, but rath-

er must be considered and resolved at trial. Accordingly, since the plaintiff has exhausted his administrative remedy with respect to the wrongful classification claim, the Government's Motion to Dismiss this allegation is denied. However, the Secretary of the Army is the only federal defendant who is empowered to correct the military classification of Private Dumas, see 10 U.S.C. § 1552(a), and therefore the plaintiff's Count Two charges against the remaining federal defendants are dismissed. Moreover, even if the plaintiff is able to prove at trial that the defendants improperly classified his brother, his legal relief necessarily will be limited, pursuant to the terms of 10 U.S.C. § 1552 et seq., to correction of Private Dumas' military record and any unpaid compensation or other benefits that might be available under 10 U.S.C. § 1552(c). Thus, the Court orders stricken from the plaintiff's amended complaint the additional relief sought by the plaintiff Dumas.[5]

### C. Count Three: Failure to Follow House Resolution

■ In Count Three, the plaintiff charges that the federal defendants have failed to honor House Resolution 292, which provides that:

"RESOLVED BY THE HOUSE OF REPRESENTATIVES, That it is the sense of the Congress that the President, through his own offices, and those of the Secretary of State and a Secretary of Defense, should continue to make the return of, or a satisfactory accounting for, the four hundred and fifty American prisoners of war, a primary objective of the foreign policy of the United States."

This claim falls squarely within the limitations of the political question doctrine and therefore must be dismissed. Indeed, in Holtzman v. Schlesinger, 484 F.2d 1307 (2d Cir.1973), the Second Circuit considered the precise legal question presented here and concluded that the political question or "nonjusticiability" rule barred the plaintiff's claims. In Holtzman, the plaintiffs, each a member of the United States House of Representatives, argued that American military activities in Cambodia were improper and unlawful because Congress had not authorized such actions pursuant to its Constitutional power to declare war. The plaintiffs further charged that the Executive Branch had failed to carry out the mandate of the "Mansfield Amendment," which called upon the President to remove all military forces from Cambodia and forthwith to obtain the release of all American prisoners of war and an accounting for all soldiers missing in action.

The Holtzman Court, although suggesting that the Mansfield Amendment had not been zealously carried out, nonetheless dismissed the plaintiffs' claims, noting that the inquiry into the removal and repatriation of American soldiers "involves diplomatic and military intelligence which is totally absent in the record before us, and its digestion in any event is beyond judicial management. The strictures of the political question doctrine cannot be avoided." Id. at 1312; see Mitchell v. Laird, 488 F.2d 611 (D.C.Cir. 1973).

The Court cannot find any legally principled distinction between the Holtzman decision and the issues presented in Count Three of the plaintiff's amended complaint. The responsibility for the repatriation, or an accounting of, American soldiers serving in the Korean conflict is vested exclusively in the Executive and Legislative Branches of the Government and the Court will not interfere or probe into this serious and delicate area of diplomatic negotiation. Accordingly, Count Three of the plaintiff's amended complaint is dismissed.

---

**5.** The relief requested by the plaintiff includes:
(a) A declaratory judgment that the defendants' actions in the Dumas matter violated the plaintiff's constitutional rights;
(b) $200,000,000 in punitive damages; and
(c) That the United States Government be ordered to make a formal demand of the Governments of China and North Korea "to return or allow medical teams to recover the remains of other United States service personnel buried within the two countries." See Plaintiff's Complaint at 6.

To summarize, the plaintiff will be permitted to raise his charges of wrongful classification against the defendant Secretary of the Army, and if he prevails at trial, the defendant will be ordered to correct the military records of Private Dumas and to pay any outstanding military benefits that are recoverable under 10 U.S.C. § 1552(c). The plaintiff's remaining claims and requests for relief against the federal defendants are dismissed. The charges against the defendant Flowers are also dismissed because the plaintiff's amended complaint does not specifically allege unlawful conduct, nor does the plaintiff state grounds upon which legal relief might be granted against this defendant.

SO ORDERED.