Benedict SEVENEY, Wanda Seveney, Patricia Seveney Bissett, and Michael Bissett (Minor)

v.

UNITED STATES GOVERNMENT, DEPARTMENT OF the NAVY, and John Doe and Others to be Identified Later During the Course of Discovery.

Civ. A. No. 80–0396.

United States District Court, D. Rhode Island.

Nov. 16, 1982.

---

Leo Paul Attilli, North Providence, R.I., for plaintiff, Benedict Seveney, Wanda Seveney, Patricia Seveney Bissett, and Michael Bissett (Minor).

Robert L. Gammell, Asst. U.S. Atty., for defendant, U.S. Government, Dept. of the Navy, and John Doe and others to be Identified Later During the Course of Discovery.

## OPINION AND ORDER

SELYA, District Judge.

According to the amended complaint herein, plaintiffs, Wanda Seveney, Patricia Seveney Bissett and Michael Bissett, are the widow, daughter and grandson, respectively, of Benedict Seveney, who died on August 26, 1978. Plaintiffs allege that his demise occurred as a result of his exposure to large amounts of radiation while he was on active duty with the United States Navy. They predicate their action on various bases, to wit, the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.* ("FTCA"), 42 U.S.C. §§ 1981, 1982 and 1983, the Rhode Island Wrongful Death Act and Survivors' Statute, R.I.G.L. (1956) § 10–7–1 *et seq.,* as amended, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. They seek one million dollars in damages.

The United States [1] has moved to dismiss the action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the grounds that the Court lacks subject matter jurisdiction and that the amended complaint fails to state a claim upon which relief can be granted. The amended complaint contains seven separate statements of claim (Counts), each of which must be addressed independently. For the reasons hereinafter discussed, the government's motion to dismiss plaintiffs' amended complaint is granted, but with leave given plaintiffs to file an amended complaint in accordance with this opinion.

## *Facts*

Taking the allegations in the amended complaint as true, as I must for purposes of this motion to dismiss, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), the relevant facts appear to be the following. Benedict Seveney was a career enlisted man serving in the United States Navy from 1945 until his retirement in 1965. In 1946, he served on board the U.S.S. DIXIE during its participation in the government's atomic bomb testing near the atoll of Bikini in the Pacific Ocean. On July 1, 1946, and again on July 25, 1946, Seveney witnessed atomic bomb blasts from his shipboard duty post. On each occasion, the U.S.S. DIXIE was stationed approximately six miles from the detonation site. The vessel remained in the area where the atomic testing had occurred for over two weeks following each of the blasts.

Subsequent to his tour of duty on board the U.S.S. DIXIE, and until his death in 1978, Seveney suffered from medical complications, ostensibly caused by his exposure to radiation in 1946. His death, which occurred after a long sickness, is stated to have been the direct result of this exposure.

Seveney's daughter, Patricia, was born in 1952. Because of her father's exposure to radiation, she claims to have suffered genetic deficiencies and extensive medical

---

1. In their amended complaint, plaintiffs named the "United States of America, Department of the Navy, John Doe and Others To Be Identified During The Course Of Discovery" as defendants. Plaintiffs alleged that the Department of the Navy, the President of the United States and the Secretary of the Department of Energy had been served pursuant to 28 U.S.C. § 2401(b). The record shows that the Attorney General of the United States, the United States Attorney for the District of Rhode Island and the Secretary of the Navy were in fact served in some manner. Inasmuch as the Court views the claims in the amended complaint (to the extent, if at all, that those claims withstand the present motion to dismiss) as being properly made under the FTCA, *see* discussion *infra,* the sole proper defendant is the United States, 28 U.S.C. § 2679. The claims against the Department of the Navy, the Department of Energy and the President of the United States as therefore dismissed with prejudice. All references hereinafter contained in this Opinion to "the defendant" or words of like import shall refer to the United States only.

complications. Patricia's son, Michael, also allegedly bears the harrowing physical effects of his grandfather's exposure to radiation.

Although the government has long been aware of the grave health hazards caused by radiation unleashed consequent to the purposeful detonation of atomic bombs, it never informed Seveney or plaintiffs of the radiation dosages to which Seveney had been exposed. Plaintiffs further allege that the government did not inform plaintiffs of the medical complications and genetic deficiencies likely to beset Seveney and his offspring as a proximate result of such exposure. Had plaintiffs received an early warning of the dangers caused by radiation, they assert that prophylactic measures would have been taken to prevent or to ameliorate some of the ill effects, medical and genetic, which they, and Seveney himself, later suffered.

Count I of the amended complaint seeks damages for the wrongful death of Seveney, resulting from his negligent exposure to large amounts of radiation. Counts II and III seek damages for the medical complications and genetic deficiencies sustained by plaintiffs Patricia Seveney Bissett and Michael Bissett, caused by Seveney's negligent exposure to radiation. Counts IV through VII seek damages for the genetic, physical and psychological harm suffered by Patricia and Michael, resulting from the government's putative failure to notify them that Seveney had been exposed to large dosages of radiation, thereby preventing these plaintiffs from taking necessary health-care precautions. Count IV, when liberally construed so as to do substantial justice, Fed.R.Civ.P. 8(f), may also be read

as averring that Seveney's injuries were exacerbated by the government's failure to inform him of the dosages of radiation to which he had been exposed.[2] On a Rule 12(b)(6) motion, the Court must draw all reasonable inferences in favor of the plaintiff. *See Rodriquez v. Board of Education of Eastchester Union Free School District*, 620 F.2d 362, 365 (2d Cir.1980).

### Jurisdictional Basis

■ The government, invoking the historic immunity of the sovereign, argues first that the Court lacks subject matter jurisdiction over this action. Suits for money damages against the United States are barred by the doctrine of sovereign immunity unless the United States consents to be sued. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The FTCA provides one such waiver of sovereign immunity. The Public Vessels Act, 46 U.S.C. § 781 *et seq.* ("PVA"), also waives immunity as to suits within its express purview, i.e., with respect to claims for damages caused by public vessels. The government contends that the action should have been brought under the PVA, rather than under the FTCA as alleged by plaintiffs, because the amended complaint alleges actions which, if proven, would constitute tortious maritime conduct. Plaintiffs' remedy with respect to these allegations, the government asserts, therefore lies under the PVA rather than under the FTCA. Because plaintiffs failed to allege the proper jurisdictional basis under the PVA, the government argues, plaintiffs' amended complaint should be dismissed for lack of subject matter jurisdiction.[3]

---

**2.** The Court thinks that this latter claim is better considered as an aspect of the wrongful death claim alleged in Count I. Count I will therefore be considered as having two separate claims, viz.: (i) wrongful death resulting from Seveney's negligent exposure to radiation and (ii) wrongful death resulting from the government's putative failure to notify Seveney of the massive dosages of radiation to which he had been exposed and the complications and deficiencies which could result therefrom (thereby preventing Seveney from taking due measures

to prevent, cure, relieve or ameliorate the injuries which led to his demise).

**3.** The government's view of the controlling tenets of federal pleading is myopic in the extreme. It is well settled that the district court has a duty under Rule 8(a) of the Federal Rules of Civil Procedure to read the complaint liberally and determine whether the facts set forth justify the assumption of jurisdiction on any ground(s), whether or not pleaded. *Schlesinger v. Councilman*, 420 U.S. 738, 744 n. 9, 95 S.Ct. 1300, 1306 n. 9, 43 L.Ed.2d 591 (1975);

Plaintiffs' claims do not appear to bear "a significant relationship to traditional maritime activity" in the typical sense. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 261, 93 S.Ct. 493, 501, 34 L.Ed.2d 454 (1972). Without such a nexus, no claim exists under the PVA. *Id.* It would appear, therefore, that plaintiffs' claims, if validly bottomed at all, are properly based on the FTCA. The Court need not decide this issue in the present action, however. As appears below, the doctrine set forth in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and in succeeding cases, governs the disposition of plaintiffs' claims as now framed in and by the amended complaint, regardless of whether jurisdiction is appropriately based on the FTCA or on the PVA.

### Feres and its Progeny

■ In *Feres,* the Supreme Court held that the United States cannot be found liable under the FTCA for injuries to servicemen due to the negligence of United States officials where the injuries arise out of or are in the course of activity incident to service. *Id.* at 146, 71 S.Ct. at 159.[4] Three factors explain this broad limitation upon the waiver of sovereign immunity. First, because the relationship between the United States and its Armed Forces is federal in nature, it makes little sense for the government's liability to members of the Armed Forces to depend on the fortuity of where the soldier or sailor happens to be stationed at the time of the injury. *Id.* at 142–44, 71 S.Ct. at 157–158. Second, the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory compensation scheme which provides pensions in lieu of money damages to injured servicemen. *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671, 97 S.Ct. 2054, 2057, 52 L.Ed.2d 665 (1977). Third, "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline,

and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty" preclude suits by a serviceman against the government arising out of activity incident to service. *Id., citing United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 145, 99 L.Ed. 139 (1954).

■ The *Feres* doctrine has been extended to bar suits brought by third parties as a result of injuries suffered by persons in the service. In *Stencel Aero Engineering Corp. v. United States, supra,* the Supreme Court, albeit over a vigorous dissent, held that a suit to indemnify a third party for damages paid by it to a member of the Armed Forces injured in the course of military service is barred under *Feres* for essentially the same reasons that a direct action is itself barred. *Id.* 431 U.S. at 673, 97 S.Ct. at 2058.

Lower courts have extended the prohibitions of this doctrine to actions brought by third persons seeking relief for personal injuries sustained by them, rather than indemnity for losses due to injuries to the serviceman himself. Thus, in *Monaco v. United States,* 661 F.2d 129, 134 (9th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982), the court dismissed a complaint brought by the daughter of a serviceman, seeking to recover for birth defects she suffered as a result of her father's exposure to radiation while stationed at the University of Chicago during the history-making days of the "Manhattan Project," the research and development of the world's first atomic weapon. *Id.* at 130. Claims for genetic injuries and birth defects suffered by the children of servicemen exposed to Agent Orange during the Vietnam War were likewise held barred in *In re "Agent Orange" Product Liability Litigation,* 506 F.Supp. 762, 781 (E.D.N.Y.1980).

Instructive as well is the case of *DeFont v. United States,* 453 F.2d 1239 (1st Cir.), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2436, 32

---

*Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir.1980).

4. The *Feres* doctrine applies with equal force to claims brought under the PVA. *Beaucoudray v. United States,* 490 F.2d 86 (5th Cir.1974).

L.Ed.2d 684 (1972). There, recovery was denied to a serviceman's family for wrongful death, loss of companionship and mental anguish claims found to be "original and distinct cause[s] of action granted to the heirs and personal representatives of the decedent to recover damages sustained by them," which arose out of the allegedly negligent care of the decedent, a soldier, received in a United States Army Hospital. *Id.,* at 1240.

The foregoing cases should be distinguished, however, from a line of cases beginning with *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). In *Brown,* the Supreme Court held that an action brought under the FTCA for damages suffered by a discharged veteran due to the negligence of a Veterans Administration hospital during an operation seven years after the veteran's discharge was not barred by *Feres.* The Court explained its holding by stating:

> The injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline. The injury occurred after his discharge, while he enjoyed a civilian status.... Certainly this claim is one which might be cognizable under local law, if the defendant were a private party.... We [therefore] adhere ... to the line drawn in the *Feres* case between injuries that did and injuries that did not arise out of or in the course of military duty. *Id.* at 112–13, 75 S.Ct. at 145.

In *Broudy v. United States,* 661 F.2d 125 (9th Cir.1981), the United States Court of Appeals for the Ninth Circuit applied the distinction set forth in *Brown* to a case which appears to be of kindred genre to the case at bar. There, the widow of a serviceman sought recovery for the wrongful death of her husband. She alleged that the government was negligent in exposing him to radiation during his participation in military exercises in the vicinity of atomic bomb tests conducted in Nevada in 1957. Thereafter, the government failed to fulfill an alleged duty to warn Broudy about the effects of radiation and to monitor and

treat Broudy after he left the service. *Id.* at 128. He died while a civilian (in 1977), of a cancer related to low-level radiation exposure. *Id.* at 126. The Ninth Circuit upheld the district court's dismissal of the plaintiff's negligent exposure claim on the basis of *Feres,* but remanded that portion of the case relating to the government's negligent failure, following Broudy's discharge from the service, to warn, monitor and treat the decedent. The Court stated:

> We agree that if the Appellant can allege and prove an independent, post-service negligent act on the part of the Government, her claim would be cognizable under the FTCA. The Government's failure to warn Major Broudy of and monitor any possible injuries arising from his exposure to radiation might constitute such an act if the Government learned of the danger after Major Broudy left the service.

*Id.* at 128–29.

Similar reasoning was applied in *Everett v. United States,* 492 F.Supp. 318 (S.D.Ohio 1980). There, the court denied a motion to dismiss a statement of claim which alleged that after the decedent left the service, the government had negligently failed to warn him of the harmful effects of the radiation to which he had been exposed while participating in military maneuvers held in 1953 in conjunction with nuclear weapons tests in Nevada.

■ An analogous case is *Thornwell v. United States,* 471 F.Supp. 344 (D.D.C. 1979), holding that plaintiff stated a claim for which he could recover in alleging that, after his discharge from the service, the government wrongfully concealed from him that he had been the subject of in-service LSD experimentation, and had thereafter failed to provide him with follow-up medical treatment. In *Schwartz v. United States,* 230 F.Supp. 536 (E.D.Pa.1964), the court allowed recovery for failure to warn, where the dangerous effects of a drug administered during plaintiff's service were not discovered until after plaintiff's separation from the Armed Forces, and were then compounded by the post-discharge negli-

gence of Veterans Administration doctors. A fine but meaningful line must, however, be drawn between a post-discharge negligent act (such as a post-discharge failure to warn) and an in-service tort continuing after discharge. While the former may be maintainable, the *Feres* doctrine still bars the latter. *Broudy v. United States,* 661 F.2d at 128, *supra.*

With the foregoing principles and distinctions in mind, the plaintiffs' claims and the cogency of the defendant's motion in respect thereto can now be evaluated.

### The Plaintiffs' Claims

■ As noted above, Count I is, in essence, a claim for Seveney's wrongful death, occurring in 1978, allegedly as a consequence of his exposure to radiation in the course of his military duties in 1946. The Court has examined not only the judicial decisions in *Feres* and its progeny, but has also considered the underlying rationale and the related legal precedents. The Court is satisfied that *Feres,* on its own facts and on the facts of plaintiffs' Count I claim here, to the extent that it seeks damages for Seveney's death caused by the exposure to radiation (as opposed to any claim for medical complications allegedly caused and/or exacerbated by an independent post-discharge failure to warn), is sound both as a matter of legal principle and as a matter of public policy. The entire statutory mosaic under which our nation's military personnel are marshalled, deployed and maintained requires, in the Court's view, that continued allegiance be given *Feres* with respect to service-related injuries.[5] The Court perceives no affront to legitimate constitutional rights by such adherence.[6] Count I, to the extent that it seeks damages for Seveney's death caused by the two described exposures to radiation, must therefore fail.[7]

---

**5.** *Feres* cannot be avoided by claiming that the injuries complained of did not manifest themselves until after Seveney's departure from active service. So long as the negligent act which caused the injuries occurred during Seveney's naval career, the strictures of *Feres* attach. *Monaco v. United States,* 661 F.2d 129, 133 (9th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

**6.** Plaintiffs have not articulated the basis of their Fourth and Fifth Amendment claims, nor have they briefed any arguments as to why the doctrine of sovereign immunity should be held waived with respect to these constitutional claims. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). It would seem that a *Bivens* remedy, so-called, implying a private right of action for damages under the Constitution, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is barred as to Count I of the amended complaint (to the extent of the claim relating to the original exposures to radiation) for the same reasons that *Feres* bars kindred suits under the FTCA and PVA. *See Jaffee v. United States,* 592 F.2d 712, 717–18 (3d Cir.1979), dismissing Constitutional claims against the government for money damages arising out of plaintiff's participation in the Army's atomic bomb testing in Nevada in 1953. As the Court in *Everett v. United States,* 492 F.Supp. 318 (S.D.Ohio 1980), stated in dismissing claims similar to those alleged here, "[a]n action sounding in constitutional, as opposed to common law, tort is not exempt from applica-

tion of the *Feres* doctrine.... To find otherwise would permit abrogation of *Feres*-based immunity through a mere exercise in pleading." *Id.* at 322. This Court fully concurs. To hold otherwise would be to elevate nomenclature over substance, and to provide a jerry-built rear entrance into the jurisdiction of the district courts in circumstances in which the Supreme Court of the United States, in *Feres,* and the Court of Appeals for this Circuit, in *DeFont,* have securely barred the doors to the courthouse.

**7.** The Court notes that the plaintiffs have made general allegations in their amended complaint to the effect that defendant's negligence violated divers sections of the Civil Rights Act (42 U.S.C. §§ 1981, 1982 and 1983) and the Fourteenth Amendment to the United States Constitution. Plaintiffs' claims under 42 U.S.C. §§ 1981 and 1982 must be dismissed out of hand as to each count of the amended complaint, since plaintiffs have neither alleged nor intimated any racially based animus, as specifically required to invoke the reach of those statutes. Plaintiffs' claims under Section 1983 and under the Fourteenth Amendment must, as to each count of the amended complaint, fall with equal celerity because plaintiffs have failed to allege state action; all the actions complained of here occurred "under color of" federal, not state law. *See Rodriguez v. Conagra, Inc.,* 527 F.2d 540 (1st Cir.1976).

Plaintiffs also generally alleged a violation of the Rhode Island wrongful death statutes, R.I. G.L. (1956), § 10–7–1 *et seq.,* as amended.

In Counts II and III of plaintiffs' amended complaint, as mentioned above, Patricia Seveney Bissett and Michael Bissett seek recovery for deterioration of their own health, averring that harm to them resulted from Seveney's exposure to radiation while on active naval duty. Plainly, since direct personal injury to civilians is claimed, albeit inextricably tied to, and dependent upon, service-related harm to an ancestor, these counts present questions which edge beyond the perimeters of the *Feres* rule.

It is palpably more difficult to justify the extension of *Feres* to these claims, which are brought by non-military plaintiffs almost twenty years after Seveney's retirement from the service. Nevertheless, the Court feels constrained to follow the holdings set forth in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977) and *De-Font v. United States,* 453 F.2d 1239 (1st Cir.), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972), both discussed *supra.* It is not for this Court to make normative judgments when controlling precedents exist. For the foregoing reasons, Counts II and III of the amended complaint must be dismissed, with prejudice, for lack of subject matter jurisdiction and for failure to state actionable claims, whether brought under the FTCA or the PVA.[8]

Counts IV through VII of the amended complaint allege that the government had a duty to inform plaintiffs of Seveney's exposure to radiation, but were negligent in performing that duty. Because the government failed to inform plaintiffs, Patricia and Michael ostensibly failed to take medical precautions which they claim would have alleviated the ensuing adverse effects. Plaintiffs do not allege with specificity when this duty arose, but do claim that defendants were aware of the dangers of exposure to radiation during much of the approximately three and one-half decades between the date of exposure and the date of the suit.[9]

Given this factual predicate, it would take the most tenuous skein of logic to justify the further extension of *Feres* to civil suits brought by civilians and founded upon supposed negligent acts or omissions occurring independent of, and at a time subsequent to, the ancestor's active military service. Seveney's relationship with his superior officers is not, on these facts, in issue; military discipline is not jeopardized; no inhibition exists as to the giving of duty orders; and no suggestion is made that the Veterans' Benefits Act can be extended to compensate for harm proximately caused by post-discharge torts.

The allegation that the government failed to warn plaintiffs of Seveney's exposure to radiation states a distinct and separate act from the original act of exposing Seveney to the radiation. To the extent that this second negligent act occurred in breach of an actionable duty *after* Seveney left the service, plaintiffs' claims in Counts IV through VII are, in the judgment of this Court, not barred by the *Feres* doctrine. *See e.g., United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *Broudy v. United States,* 661 F.2d 125 (9th Cir.

---

This state law claim, which applies only to Count I of the amended complaint, is wholly preempted by the *Feres* doctrine. *Jaffee v. United States,* 663 F.2d 1226, 1239 (3d Cir. 1981) (*en banc*), *cert. denied,* —— U.S. ——, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). As to the alleged violation of the "Rhode Island Survivor's Statute", so-called, the same is either redundant (as a misnomer reference to the above-cited state statutes appertaining to wrongful death) or refers to non-existent legislation; in any event, no further comment on this allegation seems to be required.

8. To the extent plaintiffs' general claims under the Fourth and Fifth Amendments apply to Counts II and III of the amended complaint, these constitutional claims must be dismissed as well. *See* note 6, *supra,* and the cases cited therein.

9. For example, Paragraph 17 of Count IV of plaintiffs' amended complaint alleges: "Department of the Navy was aware in the 1950's and 1960's that exposure to radiation could cause serious health complications."

1981); *Everett v. United States,* 492 F.Supp. 318 (S.D.Ohio 1980).[10]

The government cannot spread its cloak of tort immunity for service-related injuries to embrace and smother its embryonic liability for independent post-service acts of negligence. While the rigors, demands and disciplines of military service and of national defense may mandate curtailment of conventional civil liabilities within, or trailing directly in the wake of, the ambit and timeframe of active duty itself, such an abridgement of otherwise accepted remedies must not be permitted to expand beyond the natural boundaries which in the first instance stake out the terrain for the logical implementation of the theorem. Both the law and the profundity of the debt which we owe to our courageous veterans and to families and dependents of veterans require, in the eyes of this Court, strict judicial patrol of these boundaries. *Feres* and its offspring, as this Court interprets them, are not at variance with this concept, and do not in any way require a contrary result. The *Feres*-inspired foxhole thus is not accessible to the government as a place of refuge as against claims for tortious actions (not constituting simply a continuation of a previously-inaugurated in-service tort) allegedly occurring after the date of Seveney's honorable discharge.

To summarize briefly, while the amended complaint in its present form is vulnerable to the assault which the government has launched, it appears to the Court that the plaintiffs may, perhaps, be able to allege and to prove actionable claims for post-discharge failure to warn, as discussed above.[11] This possibility exists, in the present state of the record, not only as to the claims touched upon in the last four counts of the amended complaint, but even as to one or more of the earlier counts, to the extent (if at all) that Seveney's wrongful death was caused by the government's failure to inform Seveney, after his discharge from the service, that his exposure to radiation could cause serious health problems thereby preventing him from taking certain medical precautions which would have prolonged his life.

Doubtless, on this narrowly-proscribed theory, plaintiffs will have such rigorous hurdles to overcome as to duty, proximate cause, damages and the like that the game might not be worth the proverbial candle; nonetheless, that prediction is gratuitous at this stage of the proceedings, and the decision as to whether or not to go forward in accordance with the teachings of this Opinion should be left to the plaintiffs—not foreclosed on this record by the Court.[12]

It is, therefore,

ORDERED:

1. That defendant's motion to dismiss the plaintiffs' amended complaint is granted; subject however, to the right of plaintiffs, if they so elect, to file a second amended complaint limited to those statements of claim not foreclosed hereunder, within twenty (20) days from the date hereof (defendant being given a like period, if such second amended complaint be filed, within which to answer or otherwise respond thereto).

2. If no such second amended complaint is filed within the time specified above, the Clerk shall thereupon forthwith enter judgment for the defendant for costs.

10. Presumably, the claims relating to a postdischarge failure to warn are properly brought under the FTCA rather than under the PVA, as they do not appear to be related to maritime activity.

11. Nothing contained herein should be read or interpreted as a here-and-now finding by the Court that plaintiffs have yet established the existence of any post-discharge duty to warn or to inform. If, indeed, this emerges as the plaintiffs' theory of the case, the government will surely test that allegation in the proper fashion.

12. The same considerations which mandate the application of *Feres* to plaintiffs' constitutional claims under Counts I, II and III of their amended complaint would not apply to Counts IV through VII, for the reasons discussed with respect to their statutory claims under those last-mentioned counts. Plaintiffs may choose to reassert these constitutional claims based on the Fourth and Fifth Amendments if and when they file a second amended complaint.