William **BRIGGS, Administrator of the Estate of Stephen W. Briggs; William Briggs, Individually, and Charlotte Briggs, Individually, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 85–0062–S.

United States District Court, D. Rhode Island.

Sept. 12, 1985.

Mandell, Goodman, Famiglietti & Schwartz, Ltd., Mark S. Mandell, Susan M. Carlin, Lisa Dinerman, Providence, R.I., for plaintiffs.

Lincoln C. Almond, U.S. Atty., Everett A. Sammartino, Asst. U.S. Atty., Providence, R.I., for defendant.

*Memorandum and Order*

SELYA, District Judge.

This civil action seeks to banish from the halls of justice, or at least to skirt, the federal government's long-established immunity from tort claims prosecuted by or on behalf of military personnel arising out of events "incident to service." The tale, which is admittedly marked by tragic overtones, follows.

William Briggs, the administrator of the estate of his late son, Stephen W. Briggs, has brought suit against the United States. His grievances are limned in three statements of claim.[1] All of these initiatives arise under color of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 *et seq.* In the first count of the complaint, the plaintiff alleged in substance that the United States, in rendering medical care to Stephen, did so negligently, thereby causing his demise. Count 2, a subspecie of the first count, charged an absence of informed consent, with the same fatal aftermath. And count 3, which likewise focussed upon the government's responsibility for Stephen's wrongful death, sought to bring the hoary doctrine of res ipsa loquitur to bear. Although splendidly orchestrated in multiple choruses (as has been the wont of lawyers since time immemorial), the apparent trio of causes of action sound but a single reprise: that Stephen Briggs's life was taken as a result of medical malpractice on the part of the physicians who attended him.

The government has moved to dismiss the action for want of subject matter jurisdiction and for failure to state any claim upon which relief can be granted. Fed.R. Civ.P. 12(b)(1), (6). The plaintiff has objected. Oral arguments were heard on September 4, 1985.

I.

Inasmuch as both the motion and the opposition advert to "matters outside the pleading," Fed.R.Civ.P. 12(b), the court has treated the motion "as one for summary judgment." *Id.* All parties have had "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.*

---

1. As originally filed, the complaint contained five counts: the three currently at issue, and two additional claims, brought by William Briggs and his wife, Charlotte Briggs (Stephen's mother), in their personal capacity as the decedent's parents. The additional claims sought damages arising out of the withholding and/or falsifying of information anent Stephen's death. These claims were, however, discontinued without prejudice by agreement of the parties. *See* Fed.R.Civ.P. 41(a)(1)(ii). (The court authorized the entry of a written stipulation to that effect on August 7, 1985.) Accordingly, only William's claims *qua* administrator remain pending.

The summary judgment standard is clear:

> The law is settled that summary judgment will ordinarily be granted if (i) there is no genuine issue as to any material fact and (ii) it appears with sufficient clarity that the movant is as a matter of law entitled to prevail on the claim or defense to which the motion appertains. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976); *United Nuclear Corp. v. Cannon*, 553 F.Supp. 1220, 1226 (D.R.I.1982). *See* Fed.R.Civ.P. 56(c).

*Bank of New York v. Hoyt*, 617 F.Supp. 1304, 1307–08 (D.R.I.1985).

Here, the pertinent facts brook no meaningful controversy. Thus, if the government's view of the law is sound, the claim is ripe for *brevis* disposition. *Thyssen Plastik Anger KG v. Induplas, Inc.*, 576 F.2d 400, 401 (1st Cir.1978); *Bank of New York*, at 1308; *United Nuclear Corp.*, 553 F.Supp. at 1226.

## II.

The documentary evidence reveals that Stephen W. Briggs, then approximately 20 years of age, enlisted in the United States Air Force on October 5, 1978. He remained on active duty in the air force until his untimely demise on March 15, 1982. He was admitted to a military hospital in Kunsan, Korea in January of 1982, and a provisional diagnosis of "Reiter's Syndrome" was made. Shortly thereafter, Airman Briggs was transferred by military airlift to Tripler Army Medical Center, Honolulu, Hawaii. He was treated at Tripler as an in-patient from January 27, 1982 to March 2, 1982. He was thereafter released on convalescent leave and was assigned to transient airmen's quarters at Hickam Air Force Base, Hawaii, pending his imminent return to Korea. He received medication (and presumably some treatment) while at Hickam.

Stephen was found dead in his bed at Hickam on March 15, 1982. The precise cause of, and circumstances surrounding, Stephen's demise remain obscure. Yet, given the thrust of the administrative claim form underlying this FTCA suit, the limited nature of the government's area of actionable responsibility, and the narrow focus of the personal representative's claims as briefed and argued,[2] greater specificity is unnecessary at the moment. Concededly, the medical malpractice claim asserted in the complaint (and which pervades all of the three counts *sub judice*) relates to allegedly negligent acts and omissions arising out of, and in the course of, Stephen's care and treatment in early 1982 at one or more of the three military installations (Kunsan, Tripler, Hickam). Consistent with the summary judgment standard, *see* text *ante* at Part I, the court assumes for purposes of the instant motion that death ensued as a proximate result of some bungling on the part of the government personnel responsible for oversight of Stephen's condition.

## III.

■ Despite the plaintiff's ingenious attempts at both evasion and frontal attack, the case at bar is plainly governed by the doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In *Feres*, the Court held that the United States cannot be found liable under the FTCA for injuries to servicemen due to the negligence of United States officials where the injuries arise out of, or in the course of, activity incident to service. *Id.* at 146, 71 S.Ct. at 159. Three factors have been identified as expository of this broad limitation upon the waiver of sovereign immunity.

---

**2.** The plaintiff concedes that all three of the counts at issue "pertain to the medical malpractice of defendant with regard to the care and treatment of Airman Stephen W. Briggs," Plaintiff's Brief at 3 n. 3, and that "Stephen's injuries arose from the negligent medical treatment rendered to him." *Id.* at 5. The government denies any want of due care. And, the court has no occasion to reach the merits of the alleged malpractice. *See* text *post*.

First, because the relationship between the United States and its Armed Forces is federal in nature, it makes little (if any) sense for the government's liability to servicemen to depend on the fortuity of where the soldier or sailor happens to be stationed at the time of the injury. *Id.* at 142–44, 71 S.Ct. at 157–58. Second, the Veterans' Benefits Act establishes, as a substitute for tort liability, a statutory compensation scheme which provides pensions in lieu of money damages. *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977). Third, and plainly of paramount importance, "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty" preclude suits by members of the Armed Forces against the government arising out of activity incident to service. *Id.,* citing *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954). *See generally Seveney v. United States Government, Department of the Navy,* 550 F.Supp. 653, 657 (D.R.I.1982).

The rule of *Feres* has been extended, as well, to foreclose suits against the government brought by nonmilitary personnel in circumstances where such suits are derivative of in-service injuries sustained by members of the Armed Forces. *See, e.g., United States v. Shearer,* — U.S. —, — n. 3, 105 S.Ct. 3039, 3043 n. 3, 87 L.Ed.2d 38 (1985); *Stencel Aero Engineering Corp.,* 431 U.S. at 673, 97 S.Ct. at 2058; *DeFont v. United States,* 453 F.2d 1239, 1240 (1st Cir.) (per curiam), *cert. denied,* 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684

(1972); *Seveney,* 550 F.Supp. at 657–59. Indeed, the underlying action in *Feres* itself was prosecuted by an executrix. 340 U.S. at 136–37, 71 S.Ct. at 154–55.

The current of *Feres,* though harshly criticized in some circles,[3] courses strongly. The Supreme Court, as recently as June of this year, has unequivocally reconfirmed its seal of approval. *See Shearer,* — U.S. at — – —, 105 S.Ct. at 3042–43. Thus, the fact that this court may entertain some doubts as to the necessity for, or the wisdom of, the strictures of *Feres* and its progeny is totally beside the point. "In our multi-tiered federal judiciary, it is apodictic that a district court is duty-bound to follow the most current precedents of the highest tribunal in the land." *Fausto v. Diamond,* 589 F.Supp. 451, 464 (D.R.I.1984).

## IV.

Inasmuch as *Feres* precludes the maintenance of an FTCA claim for harm to a serviceman whose activity was, at the time of the injury, "incident to military service," the caselaw in the circuit courts has focused on a tripartite analysis of whether or not the requisite nexus appears in a given case: the duty status of the victim; the place where the harm transpired; and the nature of the activity in which the plaintiff (or, in a wrongful death case, the decedent) was engaged. *E.g., Flowers v. United States,* 764 F.2d 759, 760–61 (11th Cir. 1985); *Parker v. United States,* 611 F.2d 1007, 1013–15 (5th Cir.1980). To this paradigm, *Shearer* adds a special gloss: "whether the suit requires the civilian court to second-guess military decisions, ... and whether the suit might impair essential military discipline." — U.S. —, 105 S.Ct. at 3043 (citations omitted). In the instant case, the facts appertaining to these criteria admit of no genuine dispute.

---

**3.** *See, e.g., Johnson v. United States,* 749 F.2d 1530, 1535 (11th Cir.1985); *Scales v. United States,* 685 F.2d 970, 974 (5th Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1772, 76 L.Ed.2d 332 (1983); *Peluso v. United States,* 474 F.2d 605, 606 (3d Cir.), *cert. denied,* 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973); in re *"Agent Orange" Product Liability Litigation,* 580 F.Supp.

1242, 1246–47 (E.D.N.Y.1984); Hitch, The Federal Tort Claims Act and Military Personnel, 8 Rutgers L.Rev. 316 (1954); Rhodes, The *Feres* Doctrine After Twenty-Five Years, 18 A.F.L.Rev. 24 (1976); Note, From *Feres* to *Stencel:* Should Military Personnel Have Access to FTCA Recovery?, 77 Mich.L.Rev. 1099 (1977).

All prongs of the *Flowers* standard favor the applicability of the *Feres* rule. Stephen Briggs was on active duty throughout his course of treatment. And, even though he was on "convalescent leave" at the time of his demise, he was assigned (as a transient airman) to Hickam, he was billeted there, and he was being cared for at the base's outpatient clinic. He had been neither mustered out nor furloughed. The record is admittedly imprecise as to the exact situs of the negligent acts and omissions, but one thing is crystal clear: whether at Kunsan or at Tripler or at Hickam, the harm was done at a military facility staffed by personnel under military command. The decedent, in turn, was engaged in receiving treatment due to him as an active member of the Armed Forces.

Similarly, the *Shearer* factors point in the same direction. Judicial assessment of the quality of the care received by Airman Briggs would require this court to second-guess both the decisions assigning responsibility for his medical oversight to sundry facilities and the judgment calls of physicians who were themselves members of the Armed Forces. Litigation of the claim which the plaintiff presents would perforce demand that officers "testify in court as to each other's decisions and actions." *Stencel Aero Engineering Corp.*, 431 U.S. at 673, 97 S.Ct. at 2059. Military supervision, discipline, effectiveness, and control are implicated here at least equally as in the *Shearer* case itself. "Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment." *Chappell v. Wallace*, 462 U.S. 296, 300, 103 S.Ct. 2362, 2365, 76 L.Ed.2d 586 (1983).

## V.

Having these precedents in mind, it is not surprising to find that the federal courts, in the albedo of *Feres*, have held with considerable uniformity that the doctrine precludes the maintenance of an FTCA suit by or on behalf of a victimized active-duty serviceman (or derivative of such a serviceman's rights) arising out of alleged medical malpractice on the part of government hospitals and/or physicians. *See, e.g., Mollnow v. Carlton*, 716 F.2d 627, 628 (9th Cir.1983); *Harten v. Coons*, 502 F.2d 1363, 1365 & n. 6 (10th Cir.1974), *cert. denied*, 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975); *Herreman v. United States*, 476 F.2d 234, 236 (7th Cir.1973); *Henninger v. United States*, 473 F.2d 814, 815–16 (9th Cir.), *cert. denied*, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973); *DeFont v. United States*, 453 F.2d at 1239–40; *Henning v. United States*, 446 F.2d 774, 776–78 (3d Cir.1971), *cert. denied*, 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972); *Lowe v. United States*, 440 F.2d 452, 453 (5th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1971); *Hamilton v. United States*, 564 F.Supp. 1146, 1148–51 (D.Mass.), *aff'd*, 719 F.2d 1 (1st Cir.1983) (per curiam). Indeed, two of the companion cases decided along with *Feres* (*Jefferson* and *Griggs*) were medical malpractice cases. *See* 340 U.S. at 135, 71 S.Ct. at 153.

The plaintiffs concede that they can discover no meaningful authority to the contrary. They contend, instead, that *Shearer* has eroded *Feres*, and has rendered obsolete the massive wall of case law which blocks their path. *Shearer*, fairly read, in no way supports such a proposition; far from a retreat, *Shearer* is a reaffirmation of the enduring vitality of *Feres*. Whether or not the rule is perceived as overly harsh, it nevertheless remains the rule.

It is indisputable that Airman Briggs would not have been treated at Kunsan or at Tripler or at Hickam but for his active-duty military status. He was cared for at those places by reason of that status. Since military personnel were in charge of his case, the plaintiff's averments go "directly to the 'management' of the military; [they] call[ ] into question basic choices about the discipline, supervision, and control of a serviceman." *Shearer*, —— U.S.

at ——, 105 S.Ct. at 53 (footnote omitted). Medical malpractice cases, in such circumstances, are plainly among "the *type* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Id.* (emphasis original). Civilian courts "are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have." *Chappell*, 462 U.S. at 305, 103 S.Ct. at 2368, quoting Warren, The Bill of Rights and the Military, 37 N.Y.U.L. Rev. 181, 187 (1962). This court is not so venturesome as to accept the plaintiff's invitation to stray onto forbidden terrain, heedless of the weight of authoritative precedent squarely in point.

It follows inexorably that whatever evil eventuality befell the decedent whilst in military hospitals and during the course of his treatment by noncivilian physicians was necessarily "incident to military service." Thus, *Feres* bars the courthouse door.

### VI.

The plaintiff, anticipating that the court might not easily be persuaded that *Shearer* has eviscerated *Feres*, offers a battery of alternate arguments as well. He urges that since 28 U.S.C. § 2680(j) exempts from the sweep of the FTCA "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during the time of war," this suit should be permitted inasmuch as the decedent was not involved in actual combat and the nation was not at war at the time of his hospitalization and treatment. Though artfully cast, this argument is but a thinly-veiled invitation to preside over a sweeping reexamination of the *ratio decidendi* of *Feres*. *Cf. Chappell*, 462 U.S. at 300, 103 S.Ct. at 2365. This court's legitimate prerogatives are not so far-flung. If this particular wheel is to be created anew, the refashioning must be sculpted either by the Supreme Court or by the Congress.

As an adjunct to this thesis, the plaintiff also contends that *Feres* impermissibly intrudes on a valid exercise of legislative power. That asseveration is similarly jejune. It, too, seeks to unlatch gates which the Court has firmly shut—an exercise in which inferior courts may not indulge. *See Flowers*, 764 F.2d at 761; *Fausto*, 589 F.Supp. at 464.

Although perhaps supererogatory in light of the foregoing, it should also be noted that the FTCA did not create substantive causes of action against the United States; rather, it conferred an essentially procedural remedy. *Richards v. United States*, 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962); *Feres*, 340 U.S. at 142, 71 S.Ct. at 157. The precise extent of the waiver of federal sovereign immunity which the FTCA accomplished remains subject to judicial interpretation. "The United States, as sovereign, is immune from suit save as it consents to be sued, ... and the terms of its consent ... define [the] court's jurisdiction to hear the suit." *United States v. Sherwood*, 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). *Feres* defines precisely such a limitation, and both *Chappell* and *Shearer* reinforce that definition.

Moreover, the Congress, by thirty-five years of studied silence in the aftermath of *Feres*, has lent weight to the *Feres* Court's assessment of the Tort Claims Act. *Compare Bob Jones University v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 2023–34, 76 L.Ed.2d 157 (1983) (failure of Congress to modify Internal Revenue Service interpretive rulings for a dozen years evidences legislative acquiescence) *with Flood v. Kuhn*, 407 U.S. 258, 269–85, 92 S.Ct. 2099, 2105–13, 32 L.Ed.2d 728 (1972) (failure of Congress to modify Supreme Court's exemption of baseball from antitrust laws evidences legislative acquiesence). Here, as in *Bob Jones University*, 103 S.Ct. at 2032, the doctrine at issue has been "the subject of ... vigorous and widespread debate and discussion in and out of Congress" over time, and the congressional archives adequately evince a "prolonged and acute awareness of so important an

issue." *Id.* at 2033. And, the post-*Feres* amendment of 28 U.S.C. § 2671 expressly to include "military departments" within the embrace of the term "Federal agency" for FTCA purposes, *see* Pub.L. 97–124, § 1, 95 Stat. 1666 (1966), affords a solid basis for assuming that Congress had knowledge of the *Feres* Court's reading of the Act and, in effect, adopted it. *E.g., Merrill, Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 378–82 & n. 66, 102 S.Ct. 1825, 1839–41 & n. 66 (1982).

The last of this series of interleaved contentions—the notion that the *Feres* rule somehow abridges rights and privileges secured by the federal Constitution—need not long occupy the court. Such arguments have earlier been made and rejected in this district, *e.g., Seveney,* 550 F.Supp. at 659 ("The entire statutory mosaic under which our nation's military personnel are marshalled, deployed and maintained requires, in the court's view, that continued allegiance be given *Feres* with respect to service-related injuries. The court perceives no affront to legitimate constitutional rights by such adherence") (footnotes omitted). Briggs has offered no sound reason for modifying the *Seveney* holding.

### VII.

■■ The final point urged by the plaintiffs is that the applicability *vel non* of the *Feres* doctrine is primarily one of fact; and that, at the very least, this case should be held open for further (unspecified) jurisdictional fact discovery.[4] To be sure, the *Shearer* Court acknowledged that "[t]he *Feres* doctrine cannot be reduced to a few bright-line rules." —— U.S. at ——, 105 S.Ct. at 3043. It is conceivable that a fer-

tile imagination can conjure up borderline cases where a fact-intensive record would be desirable to permit a reasoned implementation of the *Feres* calculus. But, this is not such an occasion.

Even-handed adjudication necessitates due respect for the time-honored precept of *stare decisis.* In this instance, the *material* facts have been established beyond any peradventure of doubt. They echo kindred fact patterns in a myriad of other decided cases. Like facts demand like treatment, absent an intervening change in the law. To allow broad-gauge discovery in this matter would be thrice wrong: it would subject the government to unwarranted expense, further clutter an overburdened judicial system, and needlessly prolong parental torment by holding out a false mirage of hope where no authentic possibility of relief exists.

### VIII.

The facts conclusively established of record in this matter admit of only a single inference: the action is foreclosed by *Feres v. United States, supra. Feres* remains the law of the land, and the Supreme Court's commands as expressed therein do not comprise an unconstitutional or impermissible intrusion on the rights of servicemen generally or on the rights, in particular, of this plaintiff. In the last analysis, the task which the plaintiff has set for himself—the undermining of *Feres* on the district court level—is as difficult as an attempt to pin Jell-O to a tree. And, the predictability of his failure is in either event the same.

Although the tragedy of Stephen's untimely death surely evokes sympathy from

---

4. It should be noted that a district court retains the power to grant *brevis* disposition despite an objector's claim that discovery would yield additional data. This tenet has especial cogency where, as here, the protesting party has not identified specific material facts which could conceivably be revealed by means of such an incremental investigation. *See Taylor v. Gallagher,* 737 F.2d 134, 137 (1st Cir.1984). The plaintiff has not demonstrated, by a Fed.R.

Civ.P. 56(f) affidavit or otherwise, how discovery could possibly avert the slash of the *Feres* guillotine. Perhaps most telling, the complaint in this matter was filed some seven months before the instant motion was argued; no explanation has been proffered as to why pretrial discovery (if any was legitimately required) was not conducted during that rather ample period.

the most stone-hearted, the opinions of the Court do not countenance a judicial anodyne under the FTCA. Compassion must, in the last analysis, yield to the compelling force of legal precedent. There is no principled way, in the face of the host of authorities ranged on the side of the government, to hold that the action may be maintained. The *Feres* rule has withstood the test of time: if the results which trail in its roiling wake are unduly severe or unbearably cruel, it is more properly for the Congress—not the federal district courts—to ease the burden.

The defendant's motion is granted. The clerk is directed to enter judgment in favor of the United States. No costs.

*It is so ordered.*